James M. O'CONNOR, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant & Third Party Plaintiff–Appellee,

v.

Richard VOIGHT, Third Party Defendant–Appellee.

No. 91–2623.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1991.

Decided Jan. 31, 1992.

As Amended March 2, 1992.

---

Theodore Leigh Mast, Hoyert & Yoho, Chartered, Lanham, Md., for plaintiff-appellant.

Robert William Metzler, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Jonathan S. Cohen, Tax Div., U.S. Dept. of Justice, Washington, D.C., Richard D. Bennett, U.S. Atty., Baltimore, Md., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and SHEDD, District Judge for the District of South Carolina, sitting by designation.

## OPINION

HAMILTON, Circuit Judge:

James M. O'Connor appeals the order of the district court granting summary judgment in favor of the Internal Revenue Service (IRS) on his claim for refund of a penalty imposed on him under 26 U.S.C. § 6672. The district court granted summary judgment based on the conclusion that O'Connor was a responsible person under the statute who willfully failed to pay withholding taxes of a corporation in which he was a part owner and officer. This appeal presents the issues of whether or not O'Connor was a responsible person under the statute, and if he was, whether or not his conduct amounted to a willful failure to pay the withholding taxes. Because we find that there are genuine issues of material fact as to O'Connor's status as a responsible person, we reverse the decision of the district court and remand for further proceedings.

## I.

In 1980, O'Connor and Richard Voight became equal partners in Convoi Associates TA Aamco Transmission. In 1981, O'Connor and Voight incorporated this partnership (Convoi) with each receiving equal shares in the corporation. During this time, O'Connor was involved in his own business selling automotive equipment in a four state area. The capital for the venture was supplied by O'Connor, who regarded this contributed capital as an investment. The day-to-day operations of Convoi were handled by Voight.

Voight was the president and 50% owner of Convoi. He hired and fired employees, prepared and signed tax returns, made the withholding tax deposits and paid the bills. He did not contest the assertion that he was a responsible person. In later years,

when the business was failing, he made decisions regarding which bills to pay and which to postpone. He testified in his deposition that he sometimes consulted O'Connor about who to pay and always consulted O'Connor on "big things."

O'Connor was vice-president, owned the other 50% of Convoi, and was also a director of the corporation. In his deposition, O'Connor denied that Voight conferred with him on which obligations to pay. He further denied having any knowledge that taxes were owing until the IRS informed him of this in June of 1984. He recognized that Voight consulted him about "big things," but averred that these big things were limited to requests by Voight for more operating cash. O'Connor provided substantial amounts of money to Convoi, totaling $62,000, from August 1981 through May 1983.

Convoi failed to pay its FICA and income tax withholdings for the second and fourth quarters of 1982 and all quarters of 1983. On April 1, 1985, the IRS assessed 100% penalties of $47,551.43 against O'Connor and Voight for the 1982 and 1983 taxes. Convoi also failed to pay taxes for the second and third quarters of 1984, the third and fourth quarters of 1985, and the first quarter of 1986. On December 14, 1987, and October 10, 1988, respectively, the IRS assessed 100% penalties against Voight and O'Connor of $22,705.74 each for those failures to pay. O'Connor made a partial payment of the withholding taxes and then was denied a request for a refund by the IRS. Pursuant to 26 U.S.C. § 6672 (1986), O'Connor sought judicial review of this denial. The IRS filed a third party claim against Voight, seeking recovery against him of whatever it may be required to refund to O'Connor. Both the IRS and O'Connor filed motions for summary judgment.

Based on its finding that O'Connor met many of the indicia of a responsible person, the district court concluded that O'Connor was a responsible person under § 6672. Because O'Connor failed to act on the knowledge that the withholding taxes were unpaid, the district court further found

that he willfully failed to pay the taxes and was, therefore, liable for the 100% penalty. Based on these findings, the court granted summary judgment for the IRS and denied O'Connor's motion for summary judgment.

## II.

In reviewing a motion for summary judgment, O'Connor is "entitled, as on a motion for directed verdict, to have the credibility of his evidence as forecast assumed, his version of all that is disputed accepted, all internal conflicts in it resolved favorably to him; the most favorable of alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered." *Charbonnages DeFrance v. Smith*, 597 F.2d 406, 414 (4th Cir.1979) (citing 10 Charles A. Wright, Arthur R. Miller and Mary K. Kane, *Federal Practice and Procedure* §§ 2713–2716 (1983)). This is true regardless of the fact that the burden of rebutting the IRS's assessment is on O'Connor at trial. *Id.; United States v. Pomponio*, 635 F.2d 293 (4th Cir.1980) (holding an assessment by the IRS is presumptively correct).

## III.

26 U.S.C. § 6672 is intended as a device to recover withholding taxes an employer fails to pay to the government. In order for a person to be held liable under § 6672, two requirements must be satisfied: (1) the party assessed must be a person required to collect, truthfully account for, and pay over the tax, referred to as a "responsible person"; and (2) the responsible person must have willfully failed to insure that the withholding taxes were paid. *United States v. Pomponio*, 635 F.2d 293 (4th Cir. 1980); *Godfrey v. United States*, 748 F.2d 1568 (Fed.Cir.1984); *Kizzier v. United States*, 598 F.2d 1128 (8th Cir.1979).

▬ The term "responsible person" is broad and may include many individuals connected with a corporation, and more than one individual may be the responsible person for an employer. *The Purdy Co. of Illinois v. United States*, 814 F.2d 1183,

1188 (7th Cir.1987); *Commonwealth Nat. Bank of Dallas v. United States,* 665 F.2d 743, 757 (5th Cir.1982).

Several factors may indicate that a party is a responsible person under § 6672. The key element, however, is whether that person has the statutorily imposed duty to make the tax payments. This duty is considered in light of the person's authority over an enterprise's finances or general decision making. *Ruth v. United States,* 823 F.2d 1091, 1094 (7th Cir.1987); *Godfrey,* 748 F.2d at 1575. This authority is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursement of funds. *Monday v. United States,* 421 F.2d 1210 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). However, a party cannot be presumed to be a responsible person merely from titular authority. Most corporate officers probably do have the authority to make disbursements, particularly in a closely held corporation such as Convoi. The focus must instead be on substance rather than form. *Godfrey,* 748 F.2d at 1576. *Contra United States v. Burger,* 717 F.Supp. 245, 248 (S.D.N.Y. 1989) (holding mere titular authority is sufficient). The substance of the circumstances must be such that the officer exercises and uses his authority over financial affairs or general management, or is under a duty to do so, before that officer can be deemed to be a responsible person. *See Pototzky v. United States,* 8 Cl.Ct. 308 (1985) (citing *Godfrey v. United States,* 748 F.2d 1568 (Fed.Cir.1984), and holding that an officer who no longer exercised his authority, even though he maintained his title, was not a responsible person). The requisite exercised authority or duty is particularly lacking in a case such as this one where the taxpayer assumes a title merely for the purpose of protecting his investment. *See Last v. United States,* 65–1 U.S. Tax Cas. ¶ 9244 (CCH) (E.D.N.Y. Feb. 9, 1965) (holding that unpaid officers who performed only nominal duties and assumed their positions for the purpose of protecting their investments were not responsible persons).

While O'Connor did have the title of vice president, he alleges that he did not perform duties an officer might perform nor did he exercise any authority that his status as equity holder and vice president may have bestowed upon him. Taking O'Connor's assertions as true and drawing inferences in his favor, Voight was the party who ran the business and O'Connor was little more than a passive investor who neither exercised authority nor had a duty to exercise authority.

None of the other indicia of a responsible person discussed in other cases are present in this case. O'Connor did not control payroll, *White v. United States,* 372 F.2d 513, 178 Ct.Cl. 765 (1967); nor did he decide which bills were paid and which were not paid, *Haffa v. United States,* 516 F.2d 931 (7th Cir.1975). In addition, he drew no salary, had no office space at Convoi, and did not participate in any of the day-to-day management of the corporation. *See Godfrey v. United States,* 748 F.2d at 1568, 1575 (Fed.Cir.1984); *Pototzky v. United States,* 8 Cl.Ct. 308 (1985). Although O'Connor had the power to write checks, he asserts that he never exercised this power. "The mechanical dut[y] of signing checks . . . [is] not determinative of liability under § 6672." *Godfrey,* 748 F.2d at 1575. O'Connor received periodic financial reports. He did not, however, dictate financial decisions of Convoi. The district court's conclusion that O'Connor's check signing authorization, his figurehead title, and 50% ownership, gave O'Connor the requisite authority over Convoi cannot be supported where the substance of the arrangement was that Voight exercised the authority to run the business and that O'Connor, as an investor, only provided capital without involving himself in the corporation's day-to-day activities. The separation of authority within a business enterprise, and the limitation on authority held by officers is a practical reality which is acknowledged and given effect by the courts. *Godfrey,* 748 F.2d at 1576. To ignore this reality and rule otherwise would be to envelop within "responsible person" all significant

investors with titles in corporations which fail to pay their withholding taxes. By O'Connor's assertions and by inference, the authority to run the business was vested in Voight. O'Connor was a "silent" investor who did not exercise authority and was not under a duty to do so. Therefore, there are genuine issues of material fact concerning O'Connor's authority and use of authority and consequently his status as a responsible person. Summary judgment on this point was, therefore, inappropriate.*

## IV.

■ With regard to O'Connor's assertion that it was error for the district court to refuse to grant summary judgment in his favor, it is clear that an order denying summary judgment is generally an interlocutory order which is not appealable. *United States v. Florian*, 312 U.S. 656, 61 S.Ct. 713, 85 L.Ed. 1105 *reh'g denied*, 312 U.S. 715, 61 S.Ct. 738, 85 L.Ed. 1145 (1941). Such an order does not lose this characterization merely because an appeals court reverses the granting of summary judgment in favor of the other party. *Bealmer v. Texaco*, 427 F.2d 885 (9th Cir.), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970). Denial of O'Connor's summary judgment motion is not appealable at this time.

Because the evidence, and inferences reasonably drawn therefrom, indicate that there are genuine questions of material fact concerning whether or not O'Connor was a responsible party, summary judgment in favor of the IRS was not appropri-

ate. Accordingly, the decision of the district court is reversed.

REVERSED.

---

* Though we need not reach the issue of willfulness, O'Connor's knowledge of the deficiency in June of 1984, and his failure to act on that knowledge, regardless of advice he received from counsel, are relevant to this determination. *See Wright v. United States*, 809 F.2d 425 (7th Cir.1987) (willfulness is akin to recklessness and is present if the responsible person ignored a known and grave risk that the withholdings would not be paid); *Godfrey*, 748 F.2d at 1578 (failure to investigate when in possession of knowledge that taxes were unpaid is willful failure to pay). *See J.I. Alioto v. United States*, 593 F.Supp. 1402 (N.D.Cal.1984) (president not entitled to rely upon advice of corpo-

rate counsel that taxes not payable due to bankruptcy); *H. Kadah v. United States*, 600 F.Supp. 1302 (N.D.N.Y.1985) (plaintiff not entitled to rely upon statements of company purchaser that withholdings would be paid when plaintiff knew that the financial condition of the company indicated they could not be paid). *Mazo v. United States*, 591 F.2d 1151 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *see also Kalb v. United States*, 505 F.2d 506 (2nd Cir.1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975) (taxpayer liable for penalty where he failed to investigate and correct after learning of non-payment).